UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

ROMANA A. FOBBS,

       Plaintiff,

                                Case No. 13-CV-80715 MARRA

vs.

A & A NORTH AMERICAN FINANCIAL,
LLC,

       Defendant

_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
VERIFIED MOTION FOR FEES AND COSTS**

      Defendant, A & A NORTH AMERICAN FINANCIAL, LLC., by and through undersigned counsel, and pursuant to Local Rule 7.3(b), hereby files its Opposition to Plaintiff's Verified Motion for Fees and Costs [DE 27], and states as follows:

**INTRODUCTION**

      This is an action that should have never been filed against Defendant under existing federal law and state law.  This action was a tactical ploy by Plaintiff to avoid a pending state court collection action on an unpaid debt wherein A&A produced over 18 months of original account statements confirming the debt. Plaintiff counsel's billing entries in this action reveal that Plaintiff had constructive, if not actual knowledge from Plaintiff's state court attorney Christopher W. Legg ("Attorney Legg") that A&A was properly licensed by the Florida Office of Financial Regulation.   Plaintiff's counsel's time records reveal that he never had any actual contact with Plaintiff Fobbs, but rather, Attorney Yarbrough relied on Attorney Legg as his source of information and point of contact with the Plaintiff in this action. Thus, it is surprising that after three months of state court litigation and discovery, Attorney Legg was not aware of A&A's licensure status with the state of Florida. Further, it is inconceivable how two experienced Florida consumer attorneys did not search the Florida Office of Financial Regulation public online database, or simply ask A&A's Florida counsel for a copy of A&A's license. Nevertheless, Attorney Legg evidently failed to advise Attorney Yarbrough by the July 25, 2013 filing date that A&A was licensed, but did via mailed correspondence five days later, on August

1, 2013. (See Declaration of Donald A. Yarbrough In Support of Plaintiff's Motion for an Award of Attorney's Fees, Exhibit A). Thus, Attorney Yarbrough filed a federal complaint against A&A despite having constructive, and/or actual knowledge, that A&A was in fact properly licensed under Florida law.

However, despite Plaintiff's counsel's knowledge that A&A was in compliance with both the Florida licensing statute and the FDCPA, Plaintiff filed an amended FDCPA complaint beyond the one-year statute of limitations on August 16, 2013[1], in an effort to use this federal court action to leverage Defendant out of a legitimate state court action on a valid and substantiated debt.  Now, despite not having any reasonable basis in any existing law or fact, nor standing to file its instant complaint against Defendant[2], Plaintiff is now seeking $9,112.00 on a case for which she knew A&A was properly registered before taking any collection activity. Had A&A known that Plaintiff had actual knowledge of A&A's licensing prior to filing Plaintiff's amended complaint, as Plaintiff's attorney revealed in his billing records, A&A would never have made its Rule 68 Offer of Judgment.  Although Defendant A&A knew it had defenses against Plaintiff's claims, A&A made the Rule 68 Offer of Judgment, which expressly made no admission of liability, in an effort to resolve this matter expeditiously and preclude Plaintiff from continuing to expend needless fees and costs.

---

[1] Plaintiff's amended complaint attempts to rely on an abrogated Illinois statute and court of appeals opinion to stand for the proposition that A&A's assignment of Fobbs' collection account in August 2011 was void and illegal under the FCCPA, and consequently, in violation of the FDCPA. However, Attorney Yarborough, as an experienced FDCPA attorney, was well aware of the one-year statute of limitations on all FDCPA claims. *See* 15 U.S.C. § 1692k(d).

[2] Plaintiff's counsel attempted a similar claim against another out-of-state debt collector in *Garcia v. Law Offices of Joel Cardis, LLC*., 07-60236-CIV-MORENO, 2007 WL 2671291 (S.D. Fla. Sept. 7, 2007). In *Garcia*, Plaintiff sued an out-of-state Defendant alleging that that the Defendant violated both the FCCPA and FDCPA because Defendant did not register in Florida as an out-of-state debt collector prior to engaging in collection activity, and as a result of its failing to register, Defendant's collection activities (i.e. sending a collection letter to Plaintiff) constitute a deceptive means of collecting a debt in violation of the FDCPA.  The *Garcia* court, in an opinion written by Judge Moreno granting defendant's Motion for judgment on the pleadings under Fed.R.Civ.P 12(c) for Plaintiff's failure to state a claim under the FCCPA and the FDCPA, expressly held that: "The Florida Legislature would have explicitly created a private right of action if the Legislature intended to confer a right to sue for failure to register. The Legislature instead left failure to register to state enforcement under sections 559.553(5) and 559.565 of the [FCCPA]. The provision for state enforcement of the registration requirement confirms the Legislature's intent not to create a private right to sue." *Id.  See also Conner v. BCC Financial Management Services, Inc.*  489 F.Supp.2d 1358 (S.D.Fla. June 8, 2007)(summary judgment was entered in defendant debt collector's favor in a similar claim also brought by Plaintiff's counsel Donald A. Yarbrough).

## FACTUAL BACKGROUND

The following facts are undisputed in this action:

1.      On or around August 2, 2011, the debt was assigned, sold, and transferred to A&A.

2.      On December 2, 2011 A&A was officially licensed by the Florida Office of Financial Regulation under license No. CCA9902566.  *See* Exhibit "1" of Affidavit of G. Reynolds Sims attached hereto as Exhibit "A."

3.      Plaintiff's Complaint makes no allegation of any collection activity taken by Defendant against Plaintiff prior to May 20, 2013.

4.      On or about May 20, 2013, Defendant initiated a lawsuit, by and through its Florida counsel, in Palm Beach County against Plaintiff seeking a judgment for the amount owed ("state court action").  *See* Exhibit "2" of Affidavit of G. Reynolds Sims attached hereto as Exhibit "A."

5.      Trial was approaching on the state case, A&A had produced account statements confirming the validity of the debt owed. Attorney Legg had constructive, if not actual, knowledge of A&A's license on July 25, 2013. Thus, Attorney Legg either inadvertently or deliberately failed to notify Plaintiff's counsel of A&A's license.  *See* Exhibit "2" of Affidavit of G. Reynolds Sims attached hereto as Exhibit "A."

6.      On or about July 26, 2013, Plaintiff filed its original Complaint against A&A premised on Plaintiff's Counsel's claim that A&A filed its state court action against Fobbs prior to being licensed by the Florida Office of Financial Regulation pursuant to Florida Consumer Collection Practices Act Section 559.553.

7.     On August 1, 2013, Plaintiff's Counsel's bills state: "Review correspondence from [Plaintiff's state court attorney] regarding A&A North American Financial, LLC's consumer collection license, providing copy of license." (See Declaration of Donald A. Yarbrough In Support of Plaintiff's Motion for an Award of Attorney's Fees, Exhibit A.).

8.     On August 16, 2013, Plaintiff's Attorney and A&A's attorney at the time G. Reynolds Sims ("Sims") had a phone conversation wherein Plaintiff's attorney admitted that the original complaint was premised on his mistaken belief that A&A was not registered but amended the complaint premised on an Illinois case and statute.  *See* Exhibit "A" Affidavit of A&A General Counsel G. Reynolds Sims.

9.     On August 16, 2013, Plaintiff offered to settle the case for $3,500.00 and a dismissal of the state court case action and the underlying debt of approximately $3,800.00. A&A countered Plaintiff's attorney's offer with an offer to settle the federal case for $1,500.00. Plaintiff's counsel rejected the offer.  Ex. "A."

10.     August 16, 2013, Plaintiff filed an amended complaint premised on *LVNV Funding, LLC v. Trice,* 952 N.E.2d 1232 (IL App. 2011).[3]

---

[3] The abrogation of *Trice*'s "automatic nullity" rule, which serves the basis of Plaintiff's complaint, was recognized by *Galvan v. NCO Fin. Sys., Inc.*, 11 C 3918, 2013 WL 1628190 (N.D. Ill. Apr. 15, 2013) and an amendment to the underlying Illinois statute ("ICAA") discussed in *Trice*. In Galvan, the court addresses the "automatic nullity" rule addressed in *Trice*:

> The Illinois Supreme Court has already called into question at least part of the appellate court's holding in LVNV Funding. *See Downtown Disposal Servs., Inc. v. City of Chi.*, —— Ill.2d ——, 365 Ill.Dec. 684, 979 N.E.2d 50 (2012). In *Downtown Disposal Services*, the court held that there is no automatic nullity rule, and courts in Illinois instead should analyze the particular circumstances present in each case to determine whether the lawsuit may proceed despite a technical error on the part of a party . . . [t]he appellate court in LVNV Funding did not have the benefit of the 2013 amendments or the IDFPR's interpretation of the statute when it decided the case. These two pieces of information provide significant evidence that legislature did not consider the institution of litigation to render an entity a collection agency subject to

4

11.    On September 2, 2013, A&A's general counsel sent Attorney Yarbrough a research memorandum explaining: 1) The FCCPA Does Not Confer a Private Cause of Action; 2) The amended complaint does not rectify the fact that A&A was properly licensed by the State of Florida, explaining that the Illinois law relied on as the basis of the cause of action asserted Plaintiff's amended complaint was been abrogated. The letter also pointed out that in every case cited in the amended complaint, the defendants both purchased the account and took collection action prior, a situation that the amending pleadings acknowledge did not take place in this matter; 3) The Federal District Court for the Middle District of Florida has previously held that the filing of the county court lawsuit does not constitute a treat to collect a debt within the meaning of 15 U.S.C. §1692e(5). Lastly, the memorandum asked Plaintiff to withdraw his complaint in order to avoid having to file a Rule 11 Motion.  *See* Ex. "2" to Sims' Affidavit attached hereto as Exhibit "A."

## I.      The Standard for the Award of Attorney's Fees

Generally, the starting point in determining a "reasonable fee" is the calculation of the "Lodestar", which is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *Popham v. Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987).  The burden is on the moving party to establish the prevailing market rate, which is the rate charged in the community by lawyers of reasonably comparable skill, experience and reputation for similar services.  *Blum v. Stenson*, 465 U.S. 886, 895-896 n.

---

registration under the ICAA. *Galvan v. NCO Fin. Sys., Inc*., 11 C 3918, 2013 WL 1628190 (N.D. Ill. Apr. 15, 2013)(emphasis added). Moreover, the court reiterated that "[w]hen the Court reads the ICAA in its entirety, it is persuaded that the Illinois Supreme Court would not consider a creditor's institution of litigation to be sufficient to trigger the statute's registration requirement." *Id.*

14903331v1 0951406

11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *NAACP v. City of Evergreen*, 812 F.2d 1332, 1338 (11th Cir. 1987)(the applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates); *Norman*, 836 F.2d at 1299.

The determination of the appropriate hourly rate may be made either by analyzing the affidavits submitted by counsel or, if this documentation is insufficient, by relying upon the court's expertise. *Norman*, 836 F.2d at 1303. Satisfactory evidence of the market rate requires more than the mere affidavit of the attorney performing the work. *Blum*, 465 U.S. at 896 n. 11, 104 S.Ct. at 1547, n.11; *Norman*, 836 F.2d at 1299. Testimony that a given fee is reasonable is insufficient. *Hensley*, 461 U.S. at 439, n.15, 103 S.Ct. at 1943 n. 15; *Norman*, 836 F.2d at 1299. Rather, Plaintiff must satisfy her burden by presenting evidence of rates actually billed and paid in similar lawsuits. *Hensley*, 461 U.S. at 439, n.15, 103 S.Ct. at 1943 n. 15; *Norman*, 836 F.2d at 1299.

The next step in the computation of the Lodestar is to determine the amount of reasonable hours. "Excessive, redundant or otherwise unnecessary" hours should be excluded from the amount claimed. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939-40; *Norman*, 836 F.2d at 1301. Generalized statements that the time spent was reasonable or unreasonable are not entitled to much weight. *See Hensley*, 461 U.S. at 439 n. 15, 103 S.Ct. at 1942 n. 15; *Norman*, 836 F.2d at 1301. Rather, it is Plaintiff's burden to specify the hours worked with particularity as to the tasks. *Norman*, 836 F.2d at 1303.

Against this backdrop, the Supreme Court and Eleventh Circuit have observed that the factors articulated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974) may still be helpful in working through the process of determining a reasonable fee. *Hensley*, 461 U.S. at 434 n.9, 103 S.Ct. at 1940 n.9; *Norman*, 836 F.2d at 1299. The "Johnson factors" are:

> (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

6

*See Johnson*, 488 F.2d at 717-719.

However, the FDCPA "does not mandate a fee awarded in the lodestar amount.  If the concept of discretion is to have any meaning at all, it must encompass the ability to depart from the lodestar in appropriate circumstances."  *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995).  In *Carroll*, the court stated:

> In contrast to [a] technical violation of §1692c(11) we noted that other consumer protection statutes, and indeed, other provisions of the FDCPA, aim at truly abusive or deceitful debt collection, credit reporting, and similar practices.  Proof of these sorts of violations may establish a foundation for larger attorney's fee awards.

*Carroll*, 53 F.3d at 630.  A court may adjust the amount of final fees awarded in light of the results obtained.  *Hensley*, 461 U.S. at 436-37, 103 S.Ct. at 1941; *Norman*, 836 F.2d at 1302; *Popham*, 820 F.2d at 1578.  Enhancement is not appropriate under a federal fee-shifting statute. *McKenzie v. Cooper, Levins & Pastko, Inc*., 990 F.2d 1183, 1186 (11th Cir. 1993).  "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."  *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943.  When the Court has exercised its discretion and decided to reduce the Lodestar, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion.  *Hensley*, 461 U.S. at 436-37, 103 S.Ct. at 1941; *Norman*, 836 F.2d at 1302.  Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours.  *Popham*, 820 F.2d at 1578. "Many District Courts apply a lodestar method, permitting downward adjustments in appropriate circumstances." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, FN16 (U.S. 2010)(citing *Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C*., 574 F.3d 852, 854-855 (7th Cir. 2009)(the court affirmed a downward adjustment for the "unnecessary use of multiple attorneys…in a straightforward, short-lived [FDCPA] case").

With respect to the entitlement of attorney's fees under the FDCPA, many judges from various jurisdictions and levels of judicial branch have recognized its potential for abuse.  Most recently, Justice Kennedy observed:

> A collateral effect of these statutes may be to create incentives to file lawsuits even where no actual harm has occurred. This happens when the plaintiff can recover statutory damages for the

> violation and his or her attorney will receive fees if the suit is
> successful, no matter how slight the injury. *Jerman*, 130 S.Ct. at
> 1631 (U.S. 2010)(Kennedy J. dissenting).

Justice Kennedy recognized that a favorable verdict after trial is not necessarily the goal in these cases, as the majority of plaintiffs and their attorneys will be happy with a settlement, while the defendant may conclude a quick settlement is preferable to avoid the costs of discovery and a protracted trial. *Id.* "And if the suit attains class-action status, the financial stakes rise in magnitude." *Id.*

**A.     Defendant Objects to Plaintiff's Requests for Attorney's Fees for Filing a Meritless Claim**

Plaintiff is seeking recovery of a total of $9,112.00 (22.78 hours x $400.00 hourly rate) consisting of attorney's fees and costs. Plaintiff is seeking over $9,000 in attorney fees for filing an action against A&A based on two experienced Florida FDCPA attorneys Legg and Yarbrough's inability to reasonably research A&A's licensure status. Plaintiff's counsel's billings show that the same day he filed the complaint on July 25, 2013, he received "correspondence" from Attorney Legg "regarding lawsuit filed against Ramona Fobbs." (See Declaration of Donald A. Yarbrough In Support of Plaintiff's Motion for an Award of Attorney's Fees, Exhibit A, Entry Date 7/25/2013). Plaintiff's counsel's billings reveal that he never had any discussions or communication with Plaintiff Fobbs, but rather, relied entirely on Attorney Legg for information relating to A&A's licensure status. Alarmingly, Plaintiff's counsel's billings inexplicably state that he did not attempt to conduct a background investigation of A&A prior to filing the Original Complaint. (See Declaration of Donald A. Yarbrough In Support of Plaintiff's Motion for an Award of Attorney's Fees, Exhibit A, Entry Date 7/25/2013).

Plaintiff originally filed this FDCPA action against A&A premised on the allegation that A&A was in violation of Florida Consumer Collection Practices act, or F.S.A. § 559.553[4] ("FCCPA"), for not being registered with the Florida Office of Financial Regulation ("Florida" or "state of Florida") prior to A&A filing a Florida state court lawsuit ("state action") against

---

[4] F.S.A. § 559.553 (1) After January 1, 1994, no person shall engage in business in this state as a consumer collection agency or continue to do business in this state as a consumer collection agency without first registering in accordance with this part, and thereafter maintaining a valid registration.

14903331v1 0951406

Fobbs to collect a debt. Yarbrough's billings reveal that Attorney Legg, his only point of contact with Plaintiff Fobbs, was in possession of a copy of A&A's license and provided to Attorney Yarbrough as early as August 1, 2011. (See Declaration of Donald A. Yarbrough In Support of Plaintiff's Motion for an Award of Attorney's Fees, Exhibit A, Entry Date 7/25/2013).

Furthermore, as Plaintiff's counsel admitted to A&A's counsel G. Reynolds Sims ("Attorney Sims") during a phone conversation on August 16, 2013, Yarbrough discovered after filing the original complaint that A&A was in fact properly registered to collect debt in Florida over 18 months prior to A&A's state court lawsuit against Fobbs.  *See* Ex. "A." Moreover, the recent time billing sheets produced by defense counsel demonstrate that he had either constructive, if not actual notice, of Defendant's license prior to the filing of the July 25, 2014 Original Complaint. Attorney Yarbrough never talked to Plaintiff Fobbs, and all his communication and information regarding the case was from Attorney Legg. Attorney Legg, as shown in Yarbrough's billings on 8/1/13, knew through his appearance in the state case that A&A was properly licensed.

Notwithstanding Plaintiff's counsel's discovery of his mistaken post-filing, instead of dismissing the instant lawsuit, he simply amended Plaintiff's lawsuit by: 1) removing the allegation that A&A was not licensed in the State of Florida at the time of filing its state court complaint against Fobbs; and 2) changed it to an allegation that A&A was unlicensed at the time of assignment based on a abrogated 2011 Illinois Appellate Court decision interpreting a since-overturned Illinois consumer protection state statute in *LVNV Funding, LLC v. Trice*, 2011 IL App (1st) 092773, 952 N.E.2d 1232 (2011).  Plaintiff's counsel explained to Attorney Sims during the August 16, 2013 phone conversation that, unlike the original complaint which was premised on *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1198 (11th Cir. 2010), the amended complaint was solely based on the *Trice* opinion, despite Yarbrough's acknowledgement that he was not familiar with the Illinois statute relied on in *Trice*.[5]

There is simply no law, judicial opinion, statute, or governing rule of any kind which supports Plaintiff's amended Complaint's allegation that A&A violated the FDCPA by failing to

---

[5] Plaintiff's Fee Petition shows that once he realized that his original complaint was a mistake, he only spent 40 minutes researching Plaintiff's new theory of recovery for the amended complaint. Had Attorney Yarborough spent more time researching the *Trice* opinion, and understanding the Illinois statute and its subsequent amendments, he would have discovered that the *Trice* opinion was abrogated and the statute it relied on was subsequently amended.

register with the state of Florida prior to purchasing Fobbs' charged-off Chase account in August 2011.[6] In fact, in addition to the phone conversation on August 16, 2013, between Yarbrough and A&A's counsel, A&A's counsel wrote Attorney Yarbrough a letter dated September 5, 2013 wherein it cited and explained the relevant laws, A&A's licensing date, and asked Attorney Yarbrough to withdraw his client's amended complaint for its failure to state a valid cause of action. Attorney Yarbrough refused to withdraw the amended complaint and, as a result, A&A was forced to retain counsel to file an appearance in the law suit.

The original complaint alleged a violation of the Fair Debt Collections Practices act ("FDCPA"), specifically 15 U.S.C. §1692e(5), because:

> Defendant, by filing its state court suit, threatened to take legal action which could not legally be taken in attempting to collect the alleged debt due to its failure to first register with the Florida Office of Financial Regulation as required by the Florida Consumer Collection Practices act as required by the Florida Consumer Collection Practices Act Section 559.553, in violation of 15 U.S.C. §1692e(5).

*See* [DE 1 p. 4, ¶ 19]. Thereafter, Fobbs amended her complaint by simply citing an abrogated Illinois Appellate decision in *LVNV Funding, LLC v. Trice,* 2011 IL App (1st) 092773, 952 N.E.2d 1232 appeal denied, 962 N.E.2d 483 (Ill. 2011)[7] and adding the following italicized language to Count 1 of the complaint:

> Defendant, by filing its state court suit, *based upon an illegal and void assignment of the alleged debt*, threatened to take legal action which could not legally be taken in attempting to collect the alleged debt due to its failure to first register with the Florida Office of Financial Regulation as required by the Florida Consumer Collection Practices act as required by the Florida Consumer Collection Practices Act Section 559.553, in violation of 15 U.S.C. §1692e(5) *prior to assignment of the alleged debt.*

---

[6] Fobbs' Amended complaint fails as a matter of law under the FDCPA's one year statute of limitations because it is premised on A&A's purchase of Fobb's credit account in August 2011. *See* 15 USC 1692k.

[7] Abrogation Recognized by *Galvan v. NCO Financial Systems, Inc*., N.D.Ill., April 15, 2013. Also, it is important to note that the *Trice* opinion, in addition to being abrogated, is an Illinois appellate decision applying an Illinois consumer statute to a situation where a collector took various collection actions, including filing suit and obtaining a judgment, against a defendant without being registered as a debt collector under Illinois Law. In this action, Fobbs did not allege that A&A took any collection action prior to filing the state court lawsuit.

*See* [DE 1 p. 4, ¶ 17] (emphasis added). Fobbs' amended complaint failed to state a claim upon which relief may be granted because: 1) Plaintiff failed to plead an essential element to her claim under 15 U.S.C. §1692e(5) – that by filing the state court lawsuit against Plaintiff prior to being registered under the FCCPA, Defendant threatened to take a legal action or took legal action against Plaintiff that could not be legally taken; 2) even if Fobbs plead that A&A filed suit prior to registering as an out-of-state debt collector with the State of Florida, the filing of a "lawsuit" does not constitute a "threat" under the meaning of §1692e(5); 3) additionally, the filing of a state court lawsuit is afforded absolute immunity under Florida's Litigation Privilege doctrine; 4) Plaintiff cannot state any claim under the FDCPA against Defendant premised on the Defendant's August 2, 2011 purchase of Plaintiff's charged-off credit card account because it is expressly barred under the FDCPA's one year statute of limitations; and 5) Plaintiff cannot state a claim against the Defendant under the FCCPA because the FCCPA not confer a private right of action.

A&A was forced to retain local counsel in order to defend itself against this action as a result of Plaintiff's failure to adequately research: A&A's licensing history, the history and abrogation of the Illinois *Trice* case relied on for the amended complaint, and the history and amendments of Illinois licensing statute interpreted by *Trice* opinion. Thus, A&A was faced with the dilemma of expending fees on local counsel to litigate the merits of an action in order to obtain an involuntary dismissal of Plaintiff's frivolous action, or attempt to resolve the action outside of court. As a result of the dilemma created by Plaintiff's unreasonableness, A&A made a Rule 68 Offer of Judgment – which expressly made no admission of liability – in effort to resolve this matter expeditiously and incentive Attorney Yarbrough from not continuing to run up needless fees and costs. It was not until Attorney Yarbrough finally produced his billings to A&A that it was revealed that he received all his information regarding A&A from Attorney Legg, who had knowledge of A&A's licensure status.

Plaintiff and Plaintiff's counsel had an obligation to this court not to advance meritless or frivolous arguments. Specifically as to Plaintiff's counsel, the American Bar Association Model Rules of Professional Conduct Rule 3.1, requires that:

> A lawyer shall not bring or defend a proceeding, or assert or
> controvert an issue therein, unless there is a basis in law and fact
> for doing so that is not frivolous, which includes a good faith

11

> argument for an extension, modification or reversal of existing
> law.

Mod. Rules Prof. Cond. 3.1; *see also* Fed.R.Civ.P. 11 (by filing a pleading, an attorney represents that the claims raised "are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law" and "the factual contentions have evidentiary support and are not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."). Here, as evidenced by counsel's time records, Plaintiff's counsel had actual knowledge that A&A was properly licensed by the state of Florida prior to filing the complaint on behalf of his client. A&A's licensure status was easily obtainable via a basic internet search on the Florida Office of Financial Regulation's website, Plaintiff's state court attorney Christopher Legg who provided the Plaintiff to Attorney Yarbrough, or a simple phone call to A&A requesting a copy of its license. However, Plaintiff's attorney ignored the public facts regarding A&A's licensure status when it filed this action against A&A in federal court.

More concerning, is that despite Plaintiff's counsel's admission of having actual knowledge of A&A's licensure status as early as August 1, 2013, Plaintiff's counsel still filed the amended complaint, which made no allegations of collection activity taken prior to A&A's licensure, on an interpretation of an already abrogated 2011 Illinois Court of Appeals case which was premised on a portion of an Illinois state law that has been abrogated. Plaintiff's counsel not only misrepresented the holding of the *Trice* case in his pleadings filed before this court, but failed to research the history of the case relied on or read the Illinois statute upon which the opinion is based. Plaintiff's billings represent that he spent a wholly inadequate ".75/hr" on "[l]egal research regarding First Amended Complaint." (See Declaration of Donald A. Yarbrough In Support of Plaintiff's Motion for an Award of Attorney's Fees, Exhibit A.). Thus, Plaintiff premised a federal court action against a properly licensed debt collector on an inadequate 45 minute reading of *LVNV Funding, LLC v. Trice*, 2011 IL App (1st) 092773. After his cursory reading of the *Trice* opinion, which resulted in a misunderstanding of the facts and law in that case, Plaintiff's counsel filed an amended federal complaint without researching whether the Illinois statutory provision *Trice* relied on was still good law. Plaintiff's claim that a properly licensed out-of-state debt collector who obtains its licensure prior to the institution of

any collection activity is somehow in violation of the FDCPA simply is unwarranted by any existing law.

> **II.     Defendant objects to the number of hours sought by Plaintiff**

> **A.     Plaintiff Is Not Entitled to Any Fees Incurred Relating to the Filing of the Original Complaint as it was Premised On Plaintiff's Attorney's Failure to Adequately Search Public Records for A&A's License**

As previously stated, Plaintiff is seeking recovery of a total of $9,112.00 (22.78 hours x $400.00 hourly rate) consisting of attorney's fees and costs. However, Plaintiff's action filed against A&A was originally based on Plaintiff's attorney Yarbrough and Attorney Legg's fatal mistake of fact regarding A&A's licensure status. As explained herein and in the accompany affidavit, Attorney Yarbrough admitted to A&A's counsel G. Reynolds Sims during a phone conversation on August 16, 2013, that the original complaint was mistakenly filed on the belief that A&A was not licensed under Florida law at the time it filed its state court complaint against Ramona Fobbs. Once Yarbrough discovered his error, instead of dismissing the complaint against A&A, Yarbrough simply amended the complaint to attempt to alter the legal theory enough to avoid the fact that A&A was properly licensed under the Florida statute.

As such, Yarbrough is not entitled to any of the fees incurred prior to the filing of his amended complaint, as all fees incurred from July 25, 2013 through August 16, 2013 (the date of the amended complaint) are not recoverable as they constitute "excessive, redundant, or otherwise unnecessary" hours.

Thus, of the 22.78 hours Plaintiff's counsel claims to have expended in this matter, the 5.25 hours expended as a result of Yarbrough's error in research are not recoverable.

> **B.     Plaintiff Should Not be Allowed to Recover Time Incurred After Defendant's Offer of Judgment, as Such Fees are Unreasonable and Could Have been Avoided**

Defendant made its settlement offer of $1,500.00 on August 16, 2013.  Thereafter, on October 15, 2013, Defendant served an Offer of Judgment of $1,001 plus reasonable attorney's fees and costs.  After October 15, 2013, there was no longer a live case or controversy since Defendant had agreed to pay "the maximum recovery to which plaintiff was entitled." *See Keim v. ADF MidAtlantic, LLC,* 12-80577-CIV, 2013 WL 3717737 (S.D. Fla. July 15, 2013)(citing *Damasco v. Clearwire Corp.,* 662 F.3d 891, 895 (7th Cir.2011)); *see also Brown v. Kopolow,*

No. 10–80593–CIV, 2011 WL 283253, at *2 (S.D.Fla. Jan.25, 2011) ("An offer that satisfies Plaintiff's entire claim for relief eliminates the controversy between the parties and leaves nothing for the court to resolve, effectively mooting the action and removing jurisdiction.").

Therefore, any time incurred after the Rule 68 Offer should not be recoverable.  *See e.g. Waltman v. Nationwide Credit, Inc.*, 10-60588-Zloch (S.D. Fla. August 26, 2011) [DE 59] ($250 rate) ("the Court is satisfied that a reasonable loadstar for Mr. Donald A. Yarbrough, Esq. is $250 per hour" and reducing recoverable time from 25.18 hours sought, to 5.81 hours incurred before offer of judgment was served, with 1 hour added for consultation and acceptance of offer, where TCPA and state law claims had been dismissed for lack of jurisdiction); *Curtis v Credit Control Services Inc.*, Case No. 08-cv-60588-Gold (S.D. Fla. Oct. 27, 2009) [DE 79].

Here, Defendant offered one dollar more than the maximum recovery to which Plaintiff was entitled to his reasonable attorney fees, and therefore, the settlement offer should cut off future entitlement to attorneys' fees under the FDCPA from the date of the offer.  *See Id.*; *see also Marek v. Chesny*, 473 U.S. 1, 105 S. Ct. 3012, 87 L.Ed.2d 1 (1985); *Lee v. Thomas & Thomas*, 109 F.3d 302 (6th Cir. 1997); *Broadcast Music, Inc. v. Dano's Restaurant Systems, Inc.*, 902 F. Supp. 224 (M.D. Fla. 1995); *Blumel v. Mulander*, 165 F.R.D. 113 (M.D. Fla. 1996); *Denny v. Hinton*, 131 F.R.D. 659, 663-64 (M.D.N.C. 1990); *Danis Industries v. Ground Provement Techniques, Inc.*, 645 So. 2d 420 (Fla. 1994); *Sampaio v. Client Services, Inc.*, 306 Fed.Appx. 496 (11th Cir. 2009).  In *Marek*, the Supreme Court explained civil rights plaintiffs-along with other plaintiffs-who reject an offer more favorable than what is thereafter recovered at trial will not recover attorney's fees for services performed after the offer is rejected.  473 U.S. at 1.

The amount of time sought after Defendant's October 15, 2013 Offer of Judgment is 3.63 hours.  Any time expended by Plaintiff's counsel after the date of Defendant's Rule 68 Offer was superfluous and unnecessary; and Defendant should not have to pay for that time.  This time was unnecessary because it could have been avoided had Plaintiff simply chosen to timely accept Defendant's settlement offer.  There was no conceivable reason for Plaintiff to continue litigating this matter when Defendant had offered more than the maximum relief to which Plaintiff was entitled under the FDCPA.  Accordingly, the only relevant time entries for this Court to consider are attorney's fees and costs reasonably expended prior to the October 15, 2013 Rule 68 Offer.

In addition, Defendant contests the following specific item entries billed by Plaintiff's counsel as follows:

**a.**      **8/16/13** – Plaintiff's counsel billed .17 hrs for writing one email to Defendant regarding facts of case and settlement and also billed .12 hrs for writing another correspondence to Defendant regarding Plaintiff's request to confer on settlement.   The phone conversation between Defendant and Plaintiff's counsel Yarborough began at 4:05 PM and ended at approximately at 4:33PM. Defendant received one email from Plaintiff's counsel at 4:44pm (11 minutes after the phone conversation). There appears to be a time conflict and Defendant only received one email/correspondence from Plaintiff's counsel on August 16, 2013.

**b.**      **9/9/13 –** Defendant objects to the 1.17 hours spent researching A&A/Reynolds's letter to Donald Yarbrough Yarborough explaining the relevant law and requesting he withdraw his complaint, as Plaintiff's counsel never wrote a response or supplied Defendant A&A with any said research.

**c.**      **9/11/13 – 9/12/13** – Defendant opposes the 2.83 hours spent on reviewing and researching law cited in Defendant's Motion to Dismiss and Compel Arbitration, as Plaintiff never filed a response or opposition to the motion, but rather filed several motions to extend the deadline to respond.  A reasonable amount of time to have reviewed Defendant's motion is .4.

**d.**      **September 26, 2013 – October 15, 2013 -** Defendant opposes the total 3.89 hours billed between September 19, 2013 – October 15, 2013 attempting to confer, request and file motions for an extension of time. Plaintiff should not be entitled to recover fees regarding an inability to respond to a motion to dismiss within the time allotted.  Specifically, the 2.75 hours billed October 15, 2013 for preparing a second motion for extension of time, which is excessive for such a simple motion:

| Date | Description of Work Performed. | Hours | Amount Billed |
|------|-------------------------------|-------|---------------|
| 9/26/2013 | Draft Correspondence to opposing counsel Barbara Fernandez regarding Plaintiff's request to confer on motion for extension of time to file response to Motion to Dismiss | 0.05 | $20.00 |
| 9/27/2013 | Draft Correspondence to opposing counsel Barbara Fernandez regarding Plaintiff's request to confer on motion for extension of time to file response to Motion to Dismiss | 0.05 | $20.00 |

15

| Date | Description | Hours | Amount |
|---|---|---|---|
| 9/27/2013 | Review correspondence from opposing counsel Barbara Fernandez regarding Defendant's consent to Plaintiff's request to confer on motion for extension of time to file response to Motion to Dismiss | 0.05 | $20.00 |
| 9/30/2013 | Prepare Plaintiff's Unopposed Motion for Extension of Time to File Opposition to Defendant's Motion to Dismiss. | 0.5 | $200.00 |
| 10/7/2013 | Draft Correspondence to opposing counsel Barbara Fernandez regarding Plaintiff's request to confer of motion for extension of time to file response to Motion to Dismiss to afford an opportunity for discovery on the issue of arbitration. | 0.08 | $32.00 |
| 10/8/2013 | Draft correspondence to opposing counsel Barbara Fernandez regarding Plaintiff's second request to confer on Motion for Extension of time to Respond to Defendant's Motion to Dismiss | 0.05 | $20.00 |
| 10/8/2013 | Review correspondence from opposing counsel Barbara Fernandez regarding Plaintiff's second request to confer on Motion for Extension of time to Respond to Defendant's Motion to Dismiss | 0.05 | $20.00 |
| 10/9/2013 | Draft correspondence to opposing counsel Barbara Fernandez regarding Plaintiff's third request to confer on Motion for Extension of time to Respond to Defendant's Motion to Dismiss | 0.05 | $20.00 |
| 10/10/2013 | Draft correspondence to opposing counsel Barbara Fernandez regarding Plaintiff's fourth request to confer on Motion for Extension of time to Respond to Defendant's Motion to Dismiss | 0.05 | $20.00 |
| 10/10/2013 | Review correspondence from opposing counsel Barbara Fernandez regarding Plaintiff's fourth request to confer on Motion for Extension of time to Respond to Defendant's Motion to Dismiss | 0.05 | $20.00 |
| 10/11/2013 | Review correspondence from opposing counsel Barbara Fernandez regarding Defendant's opposition to Plaintiff's request to confer on Motion for Extension of time to Respond to Defendant's Motion to Dismiss | 0.05 | $20.00 |
| 10/11/2013 | Draft correspondence to opposing counsel Barbara Fernandez regarding Plaintiff's numerous requests to confer on Motion for extension of time to Respond to Defendant's Motion to Dismiss | 0.08 | $32.00 |
| 10/15/2013 | Review documents required for preparation of Plaintiff's Second Motion for Extension of Time to File Opposition to Defendant's Motion to Dismiss and Compel Arbitration | 0.08 | $32.00 |
| 10/15/2013 | Prepare Plaintiff's Second Motion for Extension of Time to File Opposition to Defendant's Motion to Dismiss and Compel Arbitration | 2.75 | $1,100.00 |
| | **TOTAL BILLED** | **3.89** | **$1,556.00** |

16

Plaintiff's counsel's billing entries, consistent with the filing of this action, were created and multiplied in an attempt to create needless and harassing attorney's fees in this action. As such, Plaintiff should not be entitled to any hours spent attempting to procure an extension of a deadline imposed by the court rules.

**e.**      **July 25, 2013** - Additionally, no fees should be awarded for any time expended on the state court case per the "American Rule."   The American Rule states that attorneys' fees are not recoverable as costs or damages unless expressly allowed by statute, court rule, contract, or a common-law exception provides to the contrary.  *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)(under the "bedrock principle known as the ' "American Rule," ' " "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."). The state court case was a separate action, of which Plaintiff's counsel Donald Yarbrough was not attorney of record.   Thus, all hours expended reviewing documents from the state court action or other exclusive state court action filings should not be allowed.

### C.      Defendant objects to Plaintiff's counsel's hourly rate as unreasonable and not customary in this community for this type of action

Defendant objects to Plaintiff's counsel's request for an hourly rate of $400 because it is unreasonable and not customary in this community for this type of action.  Given his cited experience and knowledge of pursuing claims against debt collectors under the FDCPA, Plaintiff's counsel should have been able to adequately search for Defendant A&A's license. Moreover, once discovering that A&A was properly licensed and the *Leblanc* case did not apply, Plaintiff's counsel's time entries show only 40 minutes were spent on research of a new theory of recovery based on an abrogated Illinois Appellate decision *LVNV Funding, LLC v. Trice*, 2011 IL App (1st) 092773, 952 N.E.2d 1232 appeal denied, 962 N.E.2d 483 (Ill. 2011) regarding an amended Illinois licensing statute.

Plaintiff's counsel only cites cases supporting a $350 hourly rate.  There are no cases supporting a rate of $400 an hour.  Moreover, the following cases support an hourly rate of $300 or less for a routine case such as this one. *See Harmon v. Collection Information Bureau, Inc.* Case No. 10-80727 (S.D. Fla. June 28, 2011) [DE 41] ("a rate of $300 is within the range of the prevailing market rates in this District for similar services by lawyers of reasonably comparable

17

skills, experience and reputation."); *Valencia v. The Affiliated Group, Inc.*, 2009 WL 4893113 (S.D. Fla. Sept. 21, 2009)(hourly rate of $300, rather than $350 sought by attorney Donald A. Yarbrough, was reasonable); *Turner v. Mama Mia I, Inc.*, 2008 WL 4186977, *1 (S.D. Fla. Sept. 8, 2008)("given the complexity of the case, the routine nature by which plaintiff's counsel engages in this practice, and the lack of information supporting a higher fee, the court finds that a fee of $150.00 per hour more than adequately represents a fair and accurate lodestar for Plaintiffs' counsel); *Selby v. Christian Nicholas & Assoc., Inc.*, 2010 WL 745748, *5 (M.D. Fla. Feb. 26, 2010)(court awarded $200 per hour as a reasonable hourly rate for a routine FDCPA matter). Based upon the routine nature of this case and given the shortcomings in how Attorney Yarbrough handled this matter, his rate should be no more than $200 an hour.

Pursuant to Local Rule 7.3(a)(9), the undersigned attests that rates charged by Hinshaw & Culbertson LLP for the defense of Defendant in this litigation were the following: $210 per hour for associates, and $275 per hour for partners. *See* Affidavit of Barbara Fernandez, Esq. attached hereto as Exhibit "B."

### III.     The Novelty and Difficulty of the Legal Questions

There is nothing novel about Plaintiff's claims or the legal questions presented therein. The substance of Plaintiff's claims revolved around whether Defendant was licensed when it attempted to collect an amount due, which is easily ascertained by conducting a search of Florida's Office of Financial Regulations' database.  In fact, Defendant A&A was licensed with the state of Florida, which Plaintiff's counsel failed to discovery prior to filing the original complaint.   The Plaintiff alleged a straight-forward statutory violation, which was actually flawed by contradictory evidence.  There was nothing novel regarding the claims asserted.

### IV.     The Skill Required to Perform the Legal Service Properly

In this case, the claims arise out of alleged violations of the FDCPA.  Plaintiff alleged a straight-forward statutory violation under the FDCPA.  There was nothing unique about this matter that Plaintiff's counsel has not repeatedly handled in other similar cases.

### V.     Preclusion of Other Employment by Attorney Due to Acceptance of the Case

Plaintiff has not presented any evidence in support of the motion that there was the preclusion of any other employment in order to accept Plaintiff's case. Therefore, there is no evidence that satisfies Plaintiff's burden.

### VI.     Time Limitations Imposed by the Client or the Circumstances

Plaintiff has not submitted any evidence of any time limitations imposed by the client or the circumstances, and there is no evidence to satisfy Plaintiff's burden.

### VII.     A Reduction in the Lodestar is Appropriate

Assuming that this Court calculates a lodestar, such should be reduced due to the frivolous nature of the claims regardless of the fact that Plaintiff obtained successful results. "Results obtained" is one of the twelve factors identified in *Johnson v. Georgia Highway Express*, 488 F.2d, at 718, as relevant to the calculation of a reasonable attorney's fee. *See James v. Wash Depot Holdings, Inc*., 489 F.Supp.2d 1341, 1347 (S.D. Fla. 2007)(citing *Hensley*, 461 U.S. at 436-37, 103 S.Ct. 1933); *see Blum v. Stenson*, 465 U.S. 886, 900, 104 S.Ct. 1541; *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088 (1986). Where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. *Hensley*, 461 U.S. at 440.

Here, it is not that Plaintiff obtained "limited success," the concern is that the only reason that Plaintiff obtained favorable results is due to A&A's desire to avoid expending fees on local counsel to litigate the merits of an action in order to obtain an involuntary dismissal of Plaintiff's action. As a result of the dilemma created by Plaintiff's unreasonableness, A&A made a Rule 68 Offer of Judgment in an effort to resolve this matter expeditiously and avoid costly litigation.

Notably, Plaintiff's counsel is seeking more than nine times the settlement amount for a case that should have been voluntarily dismissed or at least resolved for a nominal amount due to the lack of merit when Defendant offered to settle. Accordingly, the results obtained by Plaintiff in this case justifies an adjustment downward as to any fees awarded, particularly when this case should have been voluntarily dismissed or at the very least settled for a nominal amount.

Accordingly, Plaintiff should recover no more than $1,000 (5 hours x $200) for reasonable attorney's fees.

### VIII.   Conclusion

FDCPA plaintiffs who seek solely statutory damages plus fees and costs such as Plaintiff in this case, should not be rewarded for holding out for additional attorney's fees when they are offered a reasonable settlement amount or the maximum recovery allowed.  To allow a Plaintiff to recover attorney's fees past the time a Rule 68 offer is made offering the maximum relief, is contrary to what a "reasonable attorney's fee" recovery should be in light of the standards set by the Supreme Court in *Hensley*, *Blum*, and *Marek*, and their progenies.  Moreover, Plaintiff's counsel had actual knowledge that A&A was properly licensed by the state of Florida prior to filing the complaint on behalf of his client, and nevertheless, filed an amended complaint despite not having any reasonable basis in any existing law or fact to file the amended complaint against Defendant.  Therefore, the work expended on this case by Plaintiff's counsel was unreasonable given that the claim had no legal or evidentiary basis, which justifies a significant adjustment downward as to any fees awarded.

Respectfully submitted,

*s/ Barbara Fernandez*

Barbara Fernandez
Florida Bar No. 0493767
bfernandez@hinshawlaw.com
HINSHAW & CULBERTSON LLP
2525 Ponce de Leon Blvd.
4th Floor
Coral Gables, FL 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063
Secondary: dconnolly@hinshawlaw.com
Attorneys for Defendant A & A NORTH
AMERICAN FINANCIAL, LLC

Case No. 13-CV-80715 MARRA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Donald Yarbrough
Post Office Box 11842
Ft. Lauderdale, FL    33339
Tel:  954-537-2000
Fax:  954-566-2235
don@donyarbrough.com
Attorneys for Plaintiff

*s/ Barbara Fernandez*
Barbara Fernandez
Florida Bar No. 0493767
bfernandez@hinshawlaw.com
HINSHAW & CULBERTSON LLP
2525 Ponce de Leon Blvd.
4th Floor
Coral Gables, FL 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063
Secondary: dconnolly@hinshawlaw.com
Attorneys for Defendant A & A NORTH
AMERICAN FINANCIAL, LLC

14903331v1 0951406